

**FILED**

# In the United States Court of Federal Claims

APR 20 2011

No. 10-656C
Filed: April 20, 2011
**TO BE PUBLISHED**

**U.S. COURT OF
FEDERAL CLAIMS**

```
*************************************
FRANK J. VISCONI,               *
                                *
        Plaintiff, pro se,      *
                                *
v.                              *
                                *
THE UNITED STATES,              *
                                *
        Defendant.              *
*************************************
```

Correction of Military Records, 10 U.S.C. §
  1552;
Motion To Dismiss, RCFC 12(b)(1);
Statute of Limitations, 28 U.S.C. § 2501;
Tucker Act, 28 U.S.C. § 1491.

**Frank J. Visconi**, Plaintiff, *pro se.*

**Douglas K. Mickle**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge.*

### I.     RELEVANT FACTS.[1]

In July 1964, Frank J. Visconi ("Plaintiff") enlisted in the United States Marine Corps ("USMC"). Compl. at 4. On July 30, 1964, Mr. Visconi began active duty service. Ex. 9a. On October 16, 1964, after completing basic training, Mr. Visconi was promoted from Private to Private First Class. Ex. 1b.

In February 1965, Mr. Visconi reported for duty in Okinawa, Japan. Ex. 1c. In March 1965, Mr. Visconi was deployed to Chu Lai, Vietnam, where he served until April 1966. Compl. at 10-11. That same month, after arriving in Vietnam, Mr. Visconi allegedly participated in a Temporary Additional Duty ("TAD"), although that assignment was not mentioned in his service records. Compl. at 5.

On June 18, 1965, Mr. Visconi avers that he participated in a Search and Destroy ("S&D") mission approximately three miles from the Chu Lai base camp. Compl. at 7. Mr. Visconi and the other Marines were transported via helicopter to search for, and potentially engage in combat with, a group of Viet Cong ("VC") soldiers. Compl. at 7. When the helicopter

---

[1]     The relevant facts have been derived from the September 29, 2010 Complaint ("Compl.") and attached Exhibits ("Ex. 1a-21e").

1

landed to drop off the Marines on board, they came under fire from a group of VC soldiers. Compl. at 7. Upon exiting the helicopter, Mr. Visconi sought cover in an area of tall grass, at which point his right knee was pierced by a punji stick[2] hidden in the grass. Compl. at 7. After the VC soldiers had retreated, Mr. Visconi and the other Marines were taken back to the Chu Lai base camp via helicopter. Compl. at 7. On the helicopter ride back to Chu Lai, Mr. Visconi was treated by a Navy Hospital Corpsman for his right knee wound. Compl. at 8; *see also* Ex. 4b. He did not go to a medical facility for his injury. Compl. at 8. Neither this S&D mission nor the medical treatment appears in Mr. Visconi's medical or service records. *See* Ex. 4c.

On August 16, 1965, Mr. Visconi was promoted to the rank of Lance Corporal. Ex. 7d. On August 18-19, 1965, Mr. Visconi participated in another TAD assignment to remove wounded Marines from a battlefield as part of Operation Starlite on the Van Tuong Peninsula of Vietnam. Compl. at 9. During this assignment, Mr. Visconi was grazed on his right thigh by an enemy round or piece of shrapnel. Compl. at 10. Because Mr. Visconi suffered only a surface wound, he was treated by a Navy Hospital Corpsman and did not seek further medical attention. Compl. at 10. Again, neither the TAD assignment nor the wound suffered by Mr. Visconi appear on his medical or service records. Compl. at 9; *see also* Ex. 15a (pages from Mr. Visconi's Service Record Book). Mr. Visconi asserts that he also participated in a number of other assignments in Vietnam -- including supply operations, perimeter guard assignments, and S&D missions -- that were not recorded in his service record. Compl. at 10.

In April 1966, Mr. Visconi left Vietnam and reported to the Landing Force Training Unit in Little Creek, Virginia. Compl. at 11. On April 16, 1966, Mr. Visconi was promoted to the rank of Corporal. Ex. 8b. On December 16, 1966, Mr. Visconi was promoted to the rank of Sergeant. Ex. 8c. On July 29, 1968, Mr. Visconi was released from active duty and transferred to the Marine Corps Reserve. Ex. 9a.

In April 1969, Mr. Visconi received a letter from the Commandant of the USMC indicating that he had been promoted to the rank of Staff Sergeant. Compl. at 13. On May 2, 1969, Mr. Visconi went to the Federal Building in Detroit, Michigan to pick up the promotion warrant for his promotion. Compl. at 13; *see also* Ex. 11c (Promotion Warrant dated May 2, 1969). On that same date, while at the Detroit Federal Building, Mr. Visconi alleges he was presented with the Bronze Star Medal with a combat "V," and the Purple Heart Medal. Compl. at 14; Ex. 11d, 11e. These medals do not appear in Mr. Visconi's service records. Ex. 15a.

On July 19, 1970, Mr. Visconi completed his USMC reserve duty and received an honorable discharge. Ex. 1a. In July 1978, the basement of Mr. Visconi's home flooded, destroying most of his USMC memorabilia and service records. Compl. at 15.

---

[2] A punji stick is "a sharpened (freq. poisoned) bamboo stake set in the ground as a defence, or at the bottom of a camouflaged hole to form a trap." OXFORD ENGLISH DICTIONARY, http://www.oed.com/view/Entry/154684 (Online Version Mar. 2011).

In early 2006, Mr. Visconi decided to construct a shadow box of his military and law enforcement career. Compl. at 18. As part of this effort, he requested an updated DD-215 form[3] that he believed would reflect the medals he received on May 2, 1969, as well as other unit citations awarded after the Vietnam War ended. Compl. at 18. On February 6, 2006, Mr. Visconi received a DD-215 that indicated only his Social Security Number had been corrected from his previous DD-214.[4] Ex. 14a. After receiving the DD-215, Mr. Visconi wrote a letter to the Board for the Correction of Naval Records ("BCNR") explaining that the DD-215 form was incorrect. Compl. at 18. The BCNR replied that, because it could not locate any additional records for Mr. Visconi, no further changes would be made to his service records. Compl. at 18.

In 2007, Mr. Visconi requested and received a copy of his Service Record Book ("SRB") from his local Veterans Administration office in Tennessee. Compl. at 18. He noticed that it contained several errors relating to his Vietnam service. Compl. at 19. Over the next few years, Mr. Visconi exchanged several letters with the BCNR and the USMC Headquarters Manpower Management Division, Military Awards Branch ("MMMA") seeking to correct his service records, but was denied each time. Compl. at 19.

In late 2008, Mr. Visconi joined and created a profile on a website for USMC veterans known as "Together We Served."[5] Compl. at 19. Because of apparent inconsistencies between Mr. Visconi's Together We Served profile and his official service record, Mr. Visconi claims that some website members harassed him via email; accused him of lying about his military service; and placed his personal information on another website, http://www.pownetwork.org, that attempts to expose military imposters. Compl. at 19-23.

## II.  PROCEDURAL HISTORY.

On September 29, 2010, Plaintiff filed a Complaint at the United States Court of Federal Claims, together with attached Exhibits. The September 29, 2010 Complaint alleges that the BCNR improperly denied Mr. Visconi's requests to correct his military service and medical records. Compl. at 18-19, 24-28, 33-40. The September 29, 2010 Complaint requests that the court compel the BCNR and the MMMA to: 1) correct Mr. Visconi's military service records; 2) update his DD-215 to reflect his receipt of the Bronze Star Medal with combat "V," the Purple Heart medal, the Presidential Unit Citation, and the Combat Action Ribbon; and 3) provide proof of his corrected records to the website http://www.pownetwork.org, and order that his personal

---

[3] The DD-215 Form is titled: "Correction to DD-214, Certificate of Release of Discharge from Active Duty." Ex. 14a.

[4] The DD-214 Form is titled: "Armed Forces of the United States Report of Transfer or Discharge." Ex. 9a.

[5] "Together We Served" is a website that allows USMC "veterans and active duty personnel to re-connect with lost brothers and sisters, share in the camaraderie of other servicemen and women, and create a permanent record of their service so this may never be forgotten." TOGETHER WE SERVED, http://www.togetherweserved.com (last visited on Apr. 12, 2011).

information be removed from that website and Google. Compl. at 40. On October 19, 2010, by leave of the court, Plaintiff filed an Addendum To Case Facts.

On November 29, 2010, the Government filed a Motion To Dismiss ("Gov't Mot."), pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). On that same date, Plaintiff submitted a Second Addendum To Case Facts, without leave of the court. On December 1, 2010, the court issued an Order granting Plaintiff leave to file a Second Addendum To Case Facts, but advising Plaintiff that the court would not allow any further amendments or addendums to the September 29, 2010 Complaint. On December 8, 2010, Plaintiff filed a Response ("Pl. Resp."). On December 22, 2010, the Government filed a Reply.

On January 4, 2011, Plaintiff submitted a Sur-Reply to the Government's December 22, 2010 Reply, without leave of the court. On January 7, 2011, the Court issued an Order allowing Plaintiff to file a Sur-Reply, but advising Plaintiff that the court would not accept any further briefing. On February 9, 2011, Plaintiff sent a letter to the court requesting permission to file a supplemental brief. On that same date, the court denied Plaintiff's request.

On March 9, 2011, Plaintiff filed a Motion For Leave To File An Amended Supplemental Complaint that the court denied on that same date.

## III.   DISCUSSION.

### A.   Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. § 1491. The Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls on the plaintiff. *See FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The September 29, 2010 Complaint alleges that the court has jurisdiction to adjudicate the claims therein under 10 U.S.C. § 1552[6] and because Mr. Visconi's military enlistment documents constitute a contract with the United States under the Tucker Act. Compl. at 1-3.

---

[6] 10 U.S.C. § 1552 is titled: "Correction of military records: claims incident thereto."

### B.      Standing.

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975).     Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (internal citations omitted).

The September 29, 2010 Complaint alleges that Mr. Visconi has suffered an injury in fact that is concrete and particularized, traceable to the BCNR's denial of his requests to correct his service records, and would be redressed by a favorable decision. Compl. at 18-23, 33-40. Therefore, the court has determined that Mr. Visconi has standing to bring the claims alleged in the September 29, 2010 Complaint.

### C.      Standard For Decision On Motion To Dismiss, Pursuant To RCFC 12(b)(1).

A challenge to the "[United States Court of Federal Claims'] general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

### D.      *Pro Se* Litigants.

The pleadings of a *pro se* Plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Hughes* v. *Rowe*, 449 U.S. 5, 9 (1980) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers") (internal quotation and citation omitted). Indeed, it has been the tradition of this court to examine the record "to see if [a *pro se*] Plaintiff has a cause of action somewhere displayed." *Ruderer* v. *United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* Plaintiff's complaint, the court

"does not excuse [a complaint's] failures." *Henke* v. *United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

**E.     The Government's November 29, 2010 Motion To Dismiss.**

      **1.     10 U.S.C. § 1552 Is Not A Money-Mandating Statute.**

The September 29, 2010 Complaint alleges that the court has jurisdiction to adjudicate the claims alleged therein under 10 U.S.C. § 1552. Compl. at 1. The Government argues that the United States Court of Federal Claims does not have jurisdiction to adjudicate the claims alleged in the September 29, 2010 Complaint because 10 U.S.C. § 1552 is not a money-mandating statute. Gov't Mot. at 5. Since the September 29, 2010 Complaint does not identify a money-mandating statute, the court does not have jurisdiction to adjudicate the claims alleged therein. Gov't Mot. at 6. Plaintiff responds that, because the United States Government is a party to this case, it must be heard in the federal courts. Pl. Resp. at 2.

In *Todd* v. *United States*, 386 F.3d 1091 (Fed. Cir. 2004), the United States Court of Appeals for the Federal Circuit held that "jurisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself." *Id.* at 1094. Section 1552, however, "is not the 'money-mandating' statute that gives rise to the cause of action that provides the basis for a Tucker Act suit in the [United States] Court of Federal Claims." *Martinez* v. *United States*, 333 F.3d 1295, 1315 (Fed. Cir. 2003) (footnote omitted).

Because 10 U.S.C. § 1552 is not a money-mandating statute, the court has determined that, to the extent that the claims alleged in the September 29, 2010 Complaint rely upon 10 U.S.C. § 1552 as a basis for jurisdiction, the court does not have jurisdiction to adjudicate these claims.

      **2.     Plaintiff's Military Enlistment Contract Is Not A Basis For Tucker Act Jurisdiction.**

The September 29, 2010 Complaint alleges that Mr. Visconi's agreement to enlist in the USMC is a contract with the United States that can be adjudicated under the Tucker Act. Compl. at 2. The Government argues that "[a]bsent a breach of a specific promise in the enlistment contract, Mr. Visconi's enlistment contract cannot serve as a basis for jurisdiction under the Tucker Act." Gov't Mot. at 6. Because Mr. Visconi's claims are premised upon his military service, and not any specific promise made in his enlistment contract, the Government argues that those claims do not fall within the jurisdiction of the Tucker Act. Gov't Mot. at 7. Plaintiff responds that enlistment in the military is a contract – enlistees sign documents requiring them to perform specific duties and comply with specific regulations; in return the Government agrees to comply with the terms of the enlistment documents. Pl. Resp. at 2.

It is well established that a military enlistment contract cannot be the basis of a claim under the Tucker Act. *See Bell* v. *United States*, 366 U.S. 393, 401 (1961) ("[C]ommon-law rules governing private contracts have no place in the area of military pay. A soldier's entitlement

to pay is dependent upon statutory right."); *see also Beckering* v. *United States*, 22 Cl. Ct. 30, 32 (1990) ("The benefits owing to a military service member are governed by statutes and regulations, and not by general principles of contract law."); *Sonnenfeld* v. *United States*, 62 Fed. Cl. 336, 338 (2004) ("It is settled law, however, that Tucker Act jurisdiction for cases involving military pay must be based solely upon statute and regulation, not upon contracts of enlistment or other documents relating to enlistment.").

Therefore, as a matter of law, Mr. Visconi's enlistment contract does not provide a basis for jurisdiction under the Tucker Act.

### 3.    The September 29, 2010 Complaint Does Not Seek Money Damages.

The September 29, 2010 Complaint states: "I should be seeking monetary damages for the embarrassment this has caused me. . . . However, my objective is not to make money; it is to make things right, to make my records whole." Compl. at 28. The Government argues that because Mr. Visconi's claims are for general equitable relief and he is not seeking money damages, the United States Court of Federal Claims does not have jurisdiction to adjudicate his claims. Gov't Mot. at 8-9. Plaintiff responds that although he could seek money damages for the costs, time, and effort spent researching his claims; compiling and sending mailings; and consulting with lawyers, the Government is correct that he is seeking only injunctive relief. Pl. Resp. at 5.

The Tucker Act provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . *for liquidated or unliquidated damages* in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added). Because of this, the United States Court of Appeals for the Federal Circuit has repeatedly held that "[t]he Tucker Act does not provide independent jurisdiction over . . . claims for equitable relief." *Brown* v. *United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) (citation omitted); *see also James* v. *Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) ("It is true that limited equitable relief sometimes is available in Tucker Act suits. However, that equitable relief must be 'an incident of and collateral to' a money judgment.") (quoting 28 U.S.C. § 1491(a)(2)).

Although the court has jurisdiction to order the correction of military records, it may only do so as "incident of and collateral to [an] award of a money judgment." *Voge* v. *United States*, 844 F.2d 776, 781 (Fed. Cir. 1998) (citation omitted). Because the September 29, 2010 Complaint does not allege a claim for money damages, the court does not have jurisdiction to adjudicate the claims alleged in the September 29, 2010 Complaint.

### 4.    Plaintiff's Claims Are Not Barred By The Statute Of Limitations.

Finally, the Government argues that Mr. Visconi's claims are barred by the congressionally imposed six-year statute of limitations because all of the events he claims are missing from his military records occurred prior to 1970. Gov't Mot. at 9. Because Mr. Visconi could have discovered the alleged errors in his military records within six years of the omitted events or his discharge, his claims are now barred by the statute of limitations. Gov't Mot. at 10.

Plaintiff responds that he had no reason to believe that his military records did not properly reflect his service in the USMC, and therefore he had no reason or need to seek a copy of his military records until 2006. Pl. Resp. at 2-3. Under 10 U.S.C. § 1552(b), any request for the correction of military records must be made within three years of discovering an error. Pl. Resp. at 3. Since Plaintiff immediately sought correction of his records through the BCNR and MMMA after receiving the DD-215 form in 2006, he first sought an administrative remedy through the BCNR and MMMA, and upon denial timely filed suit. Therefore, Plaintiff argues that the claims alleged in the December 27, 2006 Complaint are not barred by the statute of limitations. Pl. Resp. at 3-4.

Plaintiff is correct in his assertion that under 10 U.S.C. § 1552(b), a claimant has three years to file a request for correction of military records. Section 1552, however, only applies to petitions filed before military correction boards, such as the BCNR, formed under the authority of the Secretary of that military department. *See* 10 U.S.C. § 1552(b).

The statute of limitations of the United States Court of Federal Claims is governed by 28 U.S.C. § 2501, which states: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The United States Court of Appeals for the Federal Circuit has held that under Section 2501, "[a] claim accrues when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Goodrich* v. *United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006) (quotation marks and citation omitted).

Accrual of a claim, however, can be postponed under the accrual suspension rule, which provides that a claim cannot accrue until "the claimant knew or should have known that the claim existed." *Id.* (quotation marks and citation omitted). For the accrual suspension rule to apply, a "plaintiff must either show that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was inherently unknowable at the accrual date." *Young* v. *United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) (quotation marks and citation omitted).

The claims alleged in the September 29, 2010 Complaint accrued when the underlying events alleged therein occurred and were not officially recorded by the USMC. Because all of these events occurred prior to 1970, the claims alleged in the September 29, 2010 Complaint are barred by this court's statute of limitations, unless the accrual was postponed by the accrual suspension rule. Plaintiff has neither argued nor proffered any evidence that the Government concealed the fact that it did not properly record his service record.

As to whether Plaintiff's injury was inherently unknowable prior to 2006, the United States Court of Appeals for the Federal Circuit has held that "[i]t is a plaintiff's knowledge of the facts of the claim that determines the accrual date." *Young*, 529 F.3d at 1385 (citing *United States* v. *Kubrick*, 444 U.S. 111, 122 (1979) ("We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment.")). Although Plaintiff *could have* discovered the errors in his military records at an earlier date, there is no evidence in the record indicating that he

knew or had any reason to be on notice of the facts underlying his claim until he received the DD-215 form in 2006.  Accordingly, the court has determined that Plaintiff's claim accrued on February 6, 2006.  *See* Ex. 14a.

Therefore, the court has determined that the claims alleged in the September 29, 2010 Complaint are not barred by the statute of limitations.

## IV.    CONCLUSION.

While the court empathizes with Mr. Visconi, the court must grant the Government's Motion To Dismiss for the reasons stated above, pursuant to RCFC 12(b)(1).

The Clerk of the United States Court of Federal Claims is directed to dismiss the September 29, 2010 Complaint.


**IT IS SO ORDERED.**

_____
**SUSAN G. BRADEN**
**Judge**